Jonathan J. Lerner (JL 7117)
Michael H. Gruenglas (MG 8705)
Maura Barry Grinalds (MB-2836)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DONALD J. TRUMP                              :
                                             :
                    Plaintiff,               :
                                             :
        - against -                          :    Case No. 05 Civ. 6323 (RPP)
                                             :
HENRY CHENG, VINCENT LO, CHARLES :                ECF Case
YEUNG, EDWARD WONG, DAVID CHIU,  :
HUDSON WATERFRONT CORP., HUDSON :
WATERFRONT I CORP., HUDSON       :
WATERFRONT II CORP., HUDSON      :
WATERFRONT III CORP., HUDSON     :
WATERFRONT IV CORP., HUDSON      :
WATERFRONT V CORP., HUDSON       :
WESTSIDE ASSOC. I, L.P., HUDSON  :
WESTSIDE ASSOC. II, L.P., HUDSON :
WESTSIDE ASSOC. III, L.P., HUDSON :
WESTSIDE ASSOC. IV, L.P., HUDSON :
WESTSIDE ASSOC. V, L.P., JOHN DOE I :
and JOHN DOE II,                 :
                                             :
                    Defendants.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
BY CERTAIN DEFENDANTS TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT FACTS ........................................................................................................4

1.    Parties ..............................................................................................................4

2.    Purported Causes of Action Asserted by Trump ........................................5

3.    Purported Basis for Jurisdiction. ..................................................................6

ARGUMENT..................................................................................................................6

THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF FEDERAL
SUBJECT MATTER JURISDICTION...............................................................................6

I.    The Standard for Dismissal Under Rule 12(b)(1) ......................................6

II.    No Diversity Exists between Trump and the Waterfront Corporations ....................6

    A.    The Waterfront Corporations' Principal Place of Business is
        New York ........................................................................................7

    B.    The Waterfront Corporations Are Separate Legal Entities,
        Distinct from Their Ultimate Shareholders in Hong Kong ............................12

III.    Diversity is Also Lacking Because the Limited Partnerships Are Necessary
      and Indispensable Parties That Destroy Diversity......................................12

    A.    The Hudson Waterfront Partnerships Must Be Joined Because
        Trump's Claims Belong to the Partnerships and Are Thus Derivative ..........13

    B.    The Hudson Waterfront Partnerships Are Also Necessary and
        Indispensable Parties Because They Have Separate Interests
        That Are Not Adequately Protected by the Partners that Are Parties
        to the Litigation............................................................................17

    C.    Joinder of the Hudson Waterfront Associates Partnerships Destroys
        Diversity and This Court's Subject Matter Jurisdiction..................................20

CONCLUSION................................................................................................................21

# TABLE OF AUTHORITIES

## CASES

Advani Enterprises, Inc. v. Underwriters at Lloyds, 140 F.3d 157 (2d Cir. 1998) .......................6

Bankston v. Burch, 27 F.3d 164 (5th Cir. 1994) ........................................................14, 16, 19, 20

Blasberg v. Oxbow Power Corp., 934 F. Supp. 21 (D. Mass. 1996).......................................15, 16

Buckley v. Control Data Corp., 923 F.2d 96 (8th Cir. 1991) .......................................................16

Carden v. Arkoma Associates, 494 U.S. 185 (1990).........................................................4, 5, 7, 20

Chamarac Properties, Inc. v. Pike, No. 86 Civ. 7919 (KMW), 1993 WL 427137
      (S.D.N.Y. Oct. 19, 1993) .................................................................................................16

Ctr. for Radio Info., Inc. v. Herbst, 876 F. Supp. 523 (S.D.N.Y. 1995).......................................11

Delalande, Inc. v. Fine, 545 F. Supp. 268 (S.D.N.Y. 1982)....................................................11, 12

Dunne v. Hackett & Dunne P'ship, Nos. Civ. A. 98-1963, Civ. A. 98-2365. 1999
      WL 147672, at *4 (E.D. La. March 15, 1999) .................................................................17

Dullard v. Berkeley Associates Co., 606 F.2d 890 (2d Cir. 1979) ................................................7

Frisone v. Pepsico, Inc., 369 F. Supp. 2d 464 (S.D.N.Y. 2005)....................................................12

Herrick Co., Inc. v. SCS Communications, Inc., 251 F.3d 315 (2d Cir. 2001) ..............................6

Hungarian Broad. Corp. v. Coleman & Co. Secs. Inc., Nos. 96 Civ. 0048 (PKL),
      96 Civ. 0724, 1996 WL 374173 (S.D.N.Y. July 2, 1996) ..........................................10, 12

Integrated Utilities Inc. v. United States, No. 96 Civ. 8983 (SAS), 1997 WL
      529007 (S.D.N.Y. Aug. 26, 1997).....................................................................................7

Jedrejcic v. Croatian Olympic Committee, 190 F.R.D. 60 (E.D.N.Y. 1999) ...........................9, 10

Krauth v. Executive Telecard, Ltd., 887 F. Supp. 641 (S.D.N.Y. 1995).........................................7

Kubin v. Miller, 801 F. Supp. 1101 (S.D.N.Y. 1992) .................................................................11

Lenz v. Associated Inns & Restaurants Co., 833 F. Supp. 362
      (S.D.N.Y. 1993).........................................................................13, 14, 15, 16, 21

Litman v. Prudential-Bache Properties, Inc., 611 A.2d 12 (Del. Ch. 1992)...........................15, 16

Moore v. Simon Enterprises, Inc., 919 F. Supp. 1007 (N.D. Tex. 1995)................................15, 20

Nat'l Union Fire Ins. v. BP Amoco P.L.C., No. 03 Civ. 0200 (GEL),
        2003 WL 1618534 (S.D.N.Y. Mar. 27, 2003) .................................................................11

Nomura Asset Capital v. Overland Co., No. C.A. 02-1604 GMS,
        2003 WL 138093 (D. Del. Jan. 8, 2003) ....................................................................15, 16

Peters v. Timespan Communications, Inc., No. 97 CIV 8750 (DC), 1999 WL
        135231 (S.D.N.Y. March 12, 1999) ..................................................................................7

R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651 (2d Cir. 1979)..................................8

Smith v. Kessner, 183 F.R.D. 373 (S.D.N.Y. 1998)................................................................18, 19

Trademark Retail, Inc. v. Apple Glen Investors, LP, 196 F.R.D. 535, 540-41 (N.D.
        Ind. 2000) .........................................................................................................................18

Weber v. King, 110 F. Supp. 2d 124 (E.D.N.Y. 2000)  ...................................................16, 17, 21

Whalen v. Carter, 954 F.2d 1087 (5th Cir. 1992) ............................................................17, 19, 20

## STATUTES

Fed. R. Civ. P. 12(b)(1) ...........................................................................................................6, 21

Fed. R. Civ. P. 19(b) .........................................................................................................16, 18, 19

28 U.S.C. § 1332.........................................................................................................................6, 7, 12

6 Del. C. § 17-201(b) ..................................................................................................................17

Defendants Hudson Waterfront Corporation, Hudson Waterfront I Corporation, Hudson Waterfront II Corporation, Hudson Waterfront III Corporation, Hudson Waterfront IV Corporation and Hudson Waterfront V Corporation, Hudson Westside Associates I, L.P., Hudson Westside Associates II, L.P., Hudson Westside Associates III, L.P., Hudson Westside Associates IV, L.P. and Hudson Westside Associates V, L.P.[1] respectfully submit this Memorandum of Law in support of their Motion to dismiss the Complaint (the "Complaint" or "Compl.") of Donald J. Trump ("Trump") pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

This action arises out of the sale of several waterfront properties located on the west side of Manhattan, New York (collectively the "Hudson Waterfront Property") which are owned and managed directly or indirectly by the five limited partnerships collectively known as Hudson Waterfront Associates I, II, III, IV, and V, L.P. (collectively, the "Hudson Waterfront Partnerships" or the "Limited Partnerships"). Each of the Hudson Waterfront Partnerships directly or indirectly owns and administers separate properties that comprise the Hudson Waterfront Property.  The Plaintiff, Donald J. Trump ("Trump") is a minority 30% limited partner in each of the Hudson Waterfront Partnerships.  Pursuant to written limited partnership agreements, each of the Hudson Waterfront Partnerships are managed and operated by a separate respective corporate general partner, Defendants Hudson Waterfront I, II, III, IV and V Corporations (collectively, the "Hudson Waterfront Corporations" or the "General Partners").

---

[1] This motion is being made at this time on behalf of the defendants that have to date been served in this action.

The purpose of the General Partners is to develop, manage, sell and/or exchange the Hudson Waterfront Property for the benefit of the Limited Partnerships. Since 1994, the General Partners have pursued these objectives on behalf of the Limited Partnerships from their offices located in New York City.  In or about 2005, exercising their authority under the Limited Partnership Agreements, the General Partners negotiated an agreement to sell the Hudson Waterfront Property for $1.76 billion -- publicly disclosed as the largest price ever paid for a residential property in New York City.  In his Complaint, Trump concedes, as he must, that "in view of market conditions, a sale was now advisable," and that the proposed sale price "provided a very high return to Trump personally" -- in the hundreds of millions of dollars.  Nevertheless, although as a minority limited partner in the Limited Partnerships, he has no right to participate in the management of the Limited Partnerships or their decisions to sell their assets, Trump has initiated this action to challenge the General Partners' decision to sell the Hudson Waterfront Property.  In short, this is an action by a minority limited partner, Trump, improperly challenging the business judgment of the General Partners -- whose owners have a much larger economic stake than does Trump in the Limited Partnership and corresponding incentive to maximize Partnership returns -- in exercising their exclusive authority to negotiate the disposition of assets owned by the Limited Partnerships.

In his haste to usurp the authority of the General Partners by lodging this Complaint, Trump has run roughshod over the fundamental requirements for federal subject matter jurisdiction.  Trump attempts to predicate federal diversity jurisdiction on the canard that the General Partners' principal place of business is Hong Kong, even though, as Trump plainly should know, they conduct all of their operations in

administering, managing and selling the Hudson Waterfront Property from their offices in New York, which is the location of their principal -- indeed only -- place of business. Therefore, like Trump, these corporate defendants are indisputably citizens of New York, destroying diversity, and mandating dismissal of this action.

In a further attempt to manufacture federal diversity jurisdiction where none exists, Trump has also disingenuously omitted from the Complaint the real parties in interest that are indispensable to this action: the Limited Partnerships themselves. Because Trump's primary claims attack the price received for the disposition of each of the Limited Partnerships' assets and allege injury to each of the Limited Partnerships, the claims belong to, and may only be asserted by, or derivatively on behalf of, each of the Limited Partnerships, which requires that each of the Limited Partnerships be made a party to this action.  Even if Trump's claims did not belong to the Limited Partnerships -- which they do -- because the claims target the sale of real estate property and assets owned solely by the Limited Partnerships, the Limited Partnerships are indispensable parties to this action.

As the Supreme Court has squarely held in Carden v. Arkoma Assocs., 494 U.S. 185 (1990), to determine the citizenship, for diversity purposes, of a limited partnership, the Court must look at the citizenship of all of its partners, both general and limited.  Id. at 187.  As a result, even if the New York citizenship of each General Partner did not foredoom diversity -- which it does -- Trump's New York citizenship is imputed to the Limited Partnerships, thereby destroying diversity as well.  Because Trump does not and cannot allege any other basis for federal subject matter jurisdiction, this action must be dismissed.

## RELEVANT FACTS

**1.    The Parties**

Plaintiff Donald J. Trump is an individual residing at 725 Fifth Avenue, New York, New York.  Trump is a limited partner in each of the Hudson Waterfront Partnerships; owning a 30% limited partnership interest in each.  (Compl. ¶ 6; see also Aff. of Paul Davis ("Davis. Aff.") ¶¶ 2-5 & Ex. 1 (Agreement of Limited Partnership of Hudson Waterfront Associates I).)  The Hudson Waterfront Partnerships are the Limited Partnerships that directly or indirectly own the Hudson Waterfront Property.  (Davis Aff. ¶ 4.)

Defendants Henry Cheng , Vincent Lo, Charles Yeung, Edward Wong and David Chiu (collectively, the "Individual Defendants") are allegedly citizens of China or Singapore, residing in Hong Kong.  (Compl. ¶¶ 7-11.)[2]

Defendants Hudson Waterfront I Corporation, Hudson Waterfront II Corporation, Hudson Waterfront III Corporation, Hudson Waterfront IV Corporation and Hudson Waterfront V Corporation, are all incorporated under the laws of Delaware.  (Id. ¶ 12 & Ex. 3.)  Contrary to the assertion in the Complaint, the principal place of business of each of the Hudson Waterfront Corporations is in New York.  (See generally Davis Aff ¶¶ 7-19.)  Each of the Hudson Waterfront Corporations serves as the General Partner for a different Hudson Waterfront Partnership.  (See Compl. ¶ 12.)  Defendant Hudson Waterfront Corporation is the General Partner of Hudson Waterfront Associates, the owner of the common areas, such as parks and roads, adjacent to the Hudson Waterfront Property.

---

[2]    As these Defendants have not yet been served and are not movants, the jurisdictional allegations concerning them are not contested, solely for purposes of this Motion.

Defendants Hudson Westside Associates I, L.P., Hudson Westside Associates II, L.P., Hudson Westside Associates III, L.P., Hudson Westside Associates IV, L.P. and Hudson Westside Associates V, L.P. are Delaware limited liability partnerships, and each is a limited partner of each of the Hudson Waterfront Partnerships. (Compl. ¶ 13.)

## 2.    __Purported Causes of Action Asserted by Trump__

In the Complaint, Trump attempts to assert a series of purported claims based on Defendants' alleged fiduciary duties to Trump: "in particular" the "most stringent of Partnership duties" arising from Defendants' "responsibilities and authority over, among other things, whether the Partnership and all of the L.P. entities would sell the [Hudson Waterfront Property] or parts thereof." (Compl. ¶ 46.)  Trump alleges that in breach of these asserted fiduciary duties, Defendants pursued the sale of the Hudson Waterfront Property to the detriment of the Limited Partnerships.  (Id. ¶ 47(a).)  Second, Trump asserts that Defendants misappropriated and/or attempted to misappropriate assets of the Partnerships.  (Id. ¶ 47(b).)  Third, Trump accuses Defendants of falsifying and/or attempting to falsify records of the Partnerships.  (Id. ¶ 47(c))  Finally, Trump accuses Defendants of "abus[ing] their Partnership powers to deprive Trump of the very partnership rights they are obligated to serve."  (Id. ¶ 47(d))

On the basis of these alleged wrongs to the Limited Partnerships, Trump asserts purported claims for breach of fiduciary duties (id. ¶¶ 45-48), aiding, abetting, and participation in breach of fiduciary duties (id. ¶¶ 49-51), conspiracy to breach fiduciary duties (id. ¶¶ 52-54), tortious interference with fiduciary duties (id. ¶¶ 55-57), and breach of the Partnership Agreements.  (Id. ¶¶ 58-61.)  In addition, Trump seeks the imposition of a constructive trust for the benefit of Trump (id. ¶¶ 62-65) and injunctive relief

5

"enjoining improper transfers of Partnership assets and monies in violation of

[Defendants'] fiduciary duties, the exchange of Partnership assets for other investment

properties, and the refusal to honor Trump's right to any Partnership proceeds."  (Id. ¶¶

66-68.)

**3.      Purported Basis for Jurisdiction**

Trump asserts that this Court has jurisdiction over the subject matter of

this action pursuant to 28 U.S.C.§ 1332(a)(2), as this action is allegedly between a citizen

of a State and citizens or subjects of a foreign state and aliens and the amount in

controversy exceeds $75,000, exclusive of interest and costs.  (Compl. ¶¶ 15-16.)  As

shown below, this asserted basis of jurisdiction does not exist.

**ARGUMENT**

**THE COMPLAINT SHOULD BE DISMISSED FOR
LACK OF FEDERAL SUBJECT MATTER JURISDICTION**

**I.      No Diversity Exists between Trump and the Waterfront Corporations**

**A.      The Standard for Dismissal Under Rule 12(b)(1)**

As plaintiff, Trump bears the burden of establishing federal subject matter

jurisdiction.  See, e.g., Herrick Co. v. SCS Communications, Inc., 251 F.3d 315, 322-23

(2d Cir. 2001) ("[I]t is well established that the party seeking to invoke jurisdiction under

28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist

and that diversity is complete") (internal quotations omitted); Advani Enters., Inc. v.

Underwriters at Lloyds, 140 F.3d 157 (2d Cir. 1998).  The sole purported basis for

federal subject matter jurisdiction is alleged diversity of citizenship between Trump and

each of the defendants.  Federal jurisdiction can only be based on 28 U.S.C. § 1332 if

complete diversity of citizenship exists, meaning that no plaintiff and no defendant are

citizens of the same state.  <u>Carden</u>, 494 U.S. at 187 (citing <u>Strawbridge v. Curtiss</u>, 7 U.S. 267 (1806)).  Whether diversity jurisdiction exists is determined by the citizenship of the parties at the time the action is commenced.  <u>Krauth v. Executive Telecard, Ltd.</u>, 887 F. Supp. 641 (S.D.N.Y. 1995) (citing Wright & Miller § 3607); <u>see</u> <u>also</u> <u>Dullard v. Berkeley Assocs. Co.</u>, 606 F.2d 890, 893 (2d Cir. 1979).

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.  <u>Peters v. Timespan Communications, Inc.</u>, No. 97 CIV. 8750 (DC), 1999 WL 135231, at *3 (S.D.N.Y. March 12, 1999) (citations omitted).  Where, as here, defendants present a factual challenge to the court's jurisdiction, the court may consider evidence outside the pleadings.  <u>See</u> <u>id.</u> (citations omitted).  It bears emphasis that "no presumptive truthfulness attaches to the complaint's jurisdictional allegations."  <u>Id.</u> (citations omitted); <u>see</u> <u>also</u> <u>Integrated Utils. Inc. v. United States</u>, No. 96 Civ. 8983 (SAS), 1997 WL 529007, at *2 (S.D.N.Y. Aug. 26, 1997) ("'[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn.'" (citation omitted)).  Thus, Trump's contention that the Hudson Waterfront Corporations' principal place of business is in Hong Kong -- which contradicts reality -- is not entitled to any deference.  (Compl. ¶ 12.)

**B.      The Waterfront Corporations' Principal
         Place of Business is New York**

It is undisputed that Trump is a citizen of New York (<u>id.</u> ¶ 6) and that the Hudson Waterfront Corporations were formed under the laws of Delaware.  (<u>Id.</u> ¶ 12.) However, under 28 U.S.C. § 1332(c)(1), a corporation is a citizen of both the state of incorporation and the state in which it has its principal place of business.  Accordingly, because the Hudson Waterfront Corporations' principal place of business is in New York

7

-- contrary to Trump's meritless assertion (Compl. ¶ 13) -- they are <u>also</u> citizens of New York State, and no diversity exists between them and Trump.

Courts in the Second Circuit have applied two tests in order to determine the principal place of business of corporations, depending on the nature of their operations:

> Where corporate operations are spread across numerous states, courts have tended to emphasize those factors that identify the place where overall policy originates… When, however, corporate operations are centralized, courts have tended to deemphasize the concentration on the corporate "nerve center" and to focus instead upon the state in which a corporation has its most extensive contacts with, or greatest impact on, the general public.

<u>R.G. Barry Corp. v. Mushroom Makers, Inc.,</u> 612 F.2d 651, 655 (2d Cir. 1979).  These tests are often referred to respectively as the "nerve center" test and the "place of operations" or "public impact" tests.  The operations of the Hudson Waterfront Corporations are not far-flung.  To the contrary, they are located in only <u>one</u> state, New York, where all the business activities of the Hudson Waterfront Corporations occur related to the Hudson Waterfront Property in New York City.  (<u>See</u> Davis Aff. ¶ 7 ). Therefore, the "place of operations" test applies.

The Hudson Waterfront Corporations were created to serve as general partners of the Hudson Waterfront Partnerships.  (<u>Id</u>. ¶¶ 2, 7.)  The agreements creating the Limited Partnerships with Trump describe the division of responsibilities between the Hudson Waterfront Corporations, as General Partner, and the limited partners, which include Trump:

> The General Partner shall have the full control over the management, operation and activities of, and dealings with, the Partnership Assets and the Partnership's properties, business and affairs and shall have all rights and powers generally conferred by law and necessary, advisable or consistent in connection with he

> purposes of the Partnership, and the Limited Partners shall not take part in the management of the business or affairs of the Partnership or control the Partnership business.

(See Davis Aff. Ex. 1, Agreement of Limited Partnership of Hudson Waterfront Associates I at 31-32 § 7.1(a).)  As General Partners, the Hudson Waterfront Corporations are actively involved in managing the development of the Hudson Waterfront Property in New York City.  In this capacity, the Waterfront Corporations exercise full control over the management, operations and activities of, and dealings with, the Hudson Waterfront Property.  (Davis Aff. ¶¶ 5-6.)  These activities, which are the primary, if not the only, functions of the Hudson Waterfront Corporations, are conducted at or from their Principal Executive offices at 175 Riverside Boulevard in New York, which is situated in the heart of the Hudson Waterfront Property itself.  (Id. ¶ 8; see also id. ¶ 14 (mailing address is 175 Riverside Bvd.).)  Indeed, all of the activities of the Hudson Waterfront Corporations are related to the development, marketing, and leasing of the Hudson Waterfront Property, as well as sales of units in certain of the improvements which are part of the Hudson Waterfront Property here in Manhattan.  (Id. ¶ 8.)

The Hudson Waterfront Corporations each file tax returns with the New York State Department of Taxation, and with the U.S. Internal Revenue Service, indicating that the address of each of the Hudson Waterfront Corporations is 175 Riverside Boulevard, New York, New York.  (Id. ¶¶ 9-10, 13 & Exs. 2, 4.)  They are also registered with the New York Department of State as having their "Principal Executive offices" at 175 Riverside Boulevard, New York, New York (id.) -- and nowhere else. See Jedrejcic v. Croatian Olympic Comm., 190 F.R.D. 60, 74 (E.D.N.Y. 1999) ("While not dispositive in determining principal place of business, regulatory and corporate

9

income tax filings are factors to be considered . . . ."); Hungarian Broad. Corp. v.

Coleman & Co. Secs., Inc., Nos. 96 Civ. 0048 (PKL), 96 Civ. 0724, 1996 WL 374173, at

*2 (S.D.N.Y. July 2, 1996) (company's filings with regulatory bodies listing New York

as the location of its principal executive offices, while not dispositive, were relevant

factor for a determination of its principal place of business).

   The books, financial records, accounting documents, legal records, and

other records of the Hudson Waterfront Corporations are maintained in New York, either

at the Principal Executive offices at 175 Riverside Boulevard, or at the offices of the

Hudson Waterfront Corporations' New York counsel.  (Davis Aff. ¶ 19.)  This is

consistent with Article 12.2 of the Agreement of Limited Partnership of Hudson

Waterfront Associates I, L.P. which provides that "[a]ll books, records and accounts of

the Partnership . . . shall, at all times, be kept at the principal office of the Partnership,"

which is in New York.  (Davis Aff. Ex. 1 at 66 § 12.2(b) (emphasis added).)

   The decisions concerning the Hudson Waterfront Property, including

decisions relating to general business plans, financial planning, proposed real estate

development activities, marketing plans, budgets and projects are developed by the

Hudson Waterfront Corporations in meetings and deliberations in New York.  (Davis Aff.

¶ 15.)  After these decisions are reviewed by directors in Hong Kong, they are

implemented in New York from the New York offices of the Hudson Waterfront

Corporations.  (Id.)  Indeed, the Hudson Waterfront Corporations do not have any other

offices and these local operations, by definition, could not be performed anywhere else.

Accordingly, it cannot be gainsaid that the Hudson Waterfront Corporations' principal

place of business is in New York, even though some of its equity holders reside abroad.

See Delalande, Inc. v. Fine, 545 F. Supp. 268, 272 (S.D.N.Y. 1982) ("[W]hile the

direction and control of [the U.S. subsidiary] may radiate from its parent company in

Paris, the management and implementation of these decisions and policies are effectuated

principally in New York."); Kubin v. Miller, 801 F. Supp. 1101, 1112 (S.D.N.Y. 1992)

(New York was principal place of business where executive officers work in New York).

       Significantly, the Hudson Waterfront Corporations' contact with the

public in discharging their duties as General Partners is effected exclusively from their

offices in New York.  From New York, the Hudson Waterfront Corporations negotiate

and enter into agreements with architects, engineers, contractors, and advertising and

marketing consultants.  (Davis Aff. ¶¶ 16-17.)  Meetings with architects, engineers,

contractors and other consultants and communications with regulatory agencies such as

the New York State Attorney General also take place in New York.  (Id. ¶ 16.)  Finally,

from their New York operations, the Hudson Waterfront Corporations market and sell

condominium units in the Hudson Waterfront Property to the general public.  (Id.)

Because the Hudson Waterfront Corporations interact with the public solely through their

New York operations, New York State is their principal place of business.  National

Union Fire Ins. v. BP Amoco P.L.C., No. 03 Civ. 0200 (GEL), 2003 WL 1618534, at *2

(S.D.N.Y. Mar. 27, 2003) ("[The public impact test] emphasizes a corporation's

interactions with the public, through its business contacts, marketing, public relations,

and sales revenues."); see also Center for Radio Info., Inc. v. Herbst, 876 F. Supp. 523,

527 (S.D.N.Y. 1995) (publishing company is a New York citizen where "it is through its

New York office that [the company] interacts with the public to accomplish its sales

objectives").

**C.      The Waterfront Corporations Are Separate Legal Entities,
Distinct from Their Ultimate Shareholders in Hong Kong**

In a strained attempt to show that the Hudson Waterfront Corporations'

principal place of business is where the Individual Defendants reside, in Hong Kong,

Trump conclusorily alleges that all named defendants are "alter egos" of the Individual

Defendants (which Trump lumps together as the alleged "Cheng Group")  (Compl. ¶ 12.)

This perfunctory allegation, devoid of any factual support, is both inaccurate and

woefully insufficient to overcome the strong presumption that "the principal place of

business of a corporation for purposes of 28 U.S.C. § 1332(c)(1) is determined without

reference to the business of parent corporations or subsidiary corporations, or owners

who are natural persons."  Hungarian Broad., 1996 WL 374173, at *1; see also Delalande,

545 F. Supp. at 272 (refusing to consider the parent company's citizenship for purposes

of determining citizenship and finding that "[i]t is an anomalous situation to suggest that

a subsidiary's 'center of gravity' is determined with reference to that of its parent, when it

is the reverse analysis which is applied generally"); accord Frisone v. Pepsico, Inc., 369 F.

Supp. 2d 464, 472 (S.D.N.Y. 2005) (corporation's principle place of business is

determined without reference to its parent's business "even where the parent corporation

exerts a high degree of control through ownership or otherwise") (citations omitted)

(internal quotations omitted).

**II.      Diversity is Also Lacking Because the Limited Partnerships Are
Necessary and Indispensable Parties That Destroy Diversity**

Even if the Hudson Waterfront Corporations were not New York citizens,

which they are, federal diversity jurisdiction still would be lacking because the Limited

Partnerships are indispensable parties whose citizenship is determined by that of all of its

members, including Trump, thereby destroying complete diversity.

A.   **The Hudson Waterfront Partnerships Must Be Joined Because Trump's Alleged Claims Belong to the Partnerships -- Not to Trump Individually -- and Must Be Brought Derivatively.**

On their face, Trump's claims in this action belong to the Hudson Waterfront Partnerships and may only be brought by the Limited Partnerships or in a derivative action on their behalf.  "[T]he determination of whether a suit is derivative or direct turns on the nature of the injury alleged and the entity which sustains the harm." Lenz v. Associated Inns & Rests. Co., 833 F. Supp. 362, 379-80 (S.D.N.Y. 1993) (citing Kramer v. Western Pac. Indus., Inc., 546 A.2d 348, 351 (Del. 1988)).  In order for a lawsuit against a general partner to be classified as direct, "a limited partner must demonstrate either direct injury or an injury that exists independently of the partnership." Id. at 380 (citations omitted).  The district court in Lenz found that "the only direct lawsuit against general partners that a limited partner can bring in an individual, non-representative capacity consists of an action for accounting."  Lenz, 833 F. Supp. at 379; accord Bankston v. Burch, 27 F.3d 164, 167 (5th Cir. 1994).  Significantly, Trump nowhere requests an accounting.

The claims in Trump's Complaint are quintessentially derivative.  Trump alleges that defendants breached their purported fiduciary and contractual obligations by contracting to sell portions of the Hudson Waterfront Property -- which admittedly belongs solely to the Limited Partnerships -- at a price lower than Trump asserts it should have been sold, thereby reducing the proceeds to the Limited Partnerships.  Even if true -- which they are not -- these conclusory allegations claim a direct injury only to the Limited Partnerships themselves from the diminished funds they will receive from the sale of such Hudson Waterfront Property.  They do not establish any direct injury to

Trump, whose injuries or recovery, if any, would occur only indirectly to the extent of his pro rata interests in the Limited Partnerships.

Indeed, Defendants' alleged breach of fiduciary duty arises, according to Trump, from their alleged "responsibilities and authority over, among other things, whether the Partnership and all the L.P. entities would sell the property or parts thereof" (Compl. ¶ 46) -- a duty owed to the Partnerships.  The alleged breach of fiduciary duty squarely implicates Partnership assets -- not Trump's individual rights.  In Trump's own words, the alleged breach arises from Defendants' "(a) pursuing of the sale of the [Hudson Waterfront Property belonging to the Limited Partnership] in a reckless, uninformed, and grossly negligent manner," "(b) misappropriating and/or attempting to misappropriate Partnership assets," and "(c) falsifying and/or attempting to falsify Partnership records."  (Id. ¶ 47 (emphasis added).)[3]  Trump's claims of aiding and abetting, conspiracy, tortious interference, breach of contract, constructive trust and request for injunctive relief all rest on the identical factual predicate and do not identify any injury unique to Trump, as opposed to the Limited Partnerships.

Courts have routinely held that claims alleging wrongs and injuries similar to those in the Complaint in this action are derivative.  See, e.g., Lenz, 833 F. Supp. at 380 (action was derivative where allegations complained of "reduced income to the Limited Partnership as a result of defendants' alleged misconduct" in entering into unprofitable sale-leaseback arrangements, and mortgage and loan agreements); accord

---

[3]      To be sure, Trump also vaguely claims that Defendants also "abuse[d] their Partnership powers to deprive Trump of the very Partnership rights they are obligated to serve" (Compl. ¶ 47(d)), but this conclusory incantation fails to identify any actual distinct injury to Trump separate from the alleged injury to the Partnership assets resulting from the challenged sale.

Blasberg v. Oxbow Power Corp., 934 F. Supp. 21, 27-28 (D. Mass. 1996) (deeming claims derivative because any recovery for alleged injury consisting of diminution of partnership assets due to "commercially unreasonable" payouts to affiliated parties would go to the partnership, not to the limited partner); Moore v. Simon Enters., Inc., 919 F. Supp. 1007, 1010 (N.D. Te x. 1995) (alleged diminution of the value of plaintiff's interest in the partnership as a result of defendants' actions is "precisely the kind of damages that courts have recognized constitutes a derivative claim").

Directly on point is Nomura Asset Capital v. Overland Co., No. C.A. 02-1604 GMS, 2003 WL 138093 (D. Del. Jan. 8, 2003), which involved claims by a limited partnership's sole limited partner against the partnership's sole general partner for the general partner's breach of the partnership agreement in failing to dispose of the partnership's real estate assets by the required deadline and decision, instead, to develop the partnership's real estate.  Id.at *1.  Holding that the limited partner's claims were derivative as they "indicate[d] possible substantial harm to the Partnership itself," the court observed that the fact "[t]hat the alleged wrongs may have also impacted [the limited partner] does not change the court's conclusion that the primary nature of this suit is derivative."  Id. at *3.

Equally apposite is Litman v. Prudential-Bache Properties, Inc., 611 A.2d 12 (Del. Ch. 1992), which also involved real estate partnerships, and in which the "gist" of the limited partners' complaint -- like Trump's here -- was that the "general partners breached their fiduciary duties by inadequately investigating and monitoring investments and by placing their interests in fees above the interests of the limited partners."  Id. at 15-16.  Just as this Court should find here, the Delaware Chancery Court in Litman held

that the limited partners' claims were derivative because the alleged damages, lower income for the partnership and diminished distributions, would constitute injury to the partnership directly and would damage the limited partner plaintiffs only indirectly "to the extent of their proportionate interest in the Partnership" Id. at 16.[4]

Where, as here, the claims asserted are derivative, the limited partnership is a necessary and indispensable party that must be added to the action.  See Lenz, 833 F. Supp. at 378 ("Simply put, in a derivative action by a limited partner, the limited partnership is an indispensable party."); Chamarac Props., Inc. v. Pike, No. 86 Civ. 7919 (KMW), 1993 WL 427137, at *5 (S.D.N.Y. Oct. 19, 1993) ("In any derivative action, the limited partnership on whose behalf suit is brought is an indispensable party under Fed. R. Civ. P. 19(b)"); accord Weber v. King, 110 F. Supp. 2d 124, 133 (E.D.N.Y. 2000) ("[B]ecause Plaintiffs bring these claims derivatively on behalf of the [LLC], the [LLC] is an indispensable party and the inability to join it as a party requires the dismissal of this action"); see also Bankston, 27 F.3d at 167 ("In this case, the partnership is even more than the real party in interest -- it is an indispensable party without whom the lawsuit should not have gone forward") (emphasis in original); Buckley v. Control Data Corp., 923 F.2d 96, 98 (8th Cir. 1991) ("It is well established that an entity on whose behalf a derivative claim is asserted is a necessary defendant in the derivative action").

---

[4]     The fact that all the other partners of the Hudson Waterfront Partnerships are defendants in the action does not affect the derivative nature of Trump's claims.  A similar argument was rejected in Blasberg v. Oxbow Corp., 934 F. Supp. 21 (D. Mass. 1996), in which defendants argued that since the plaintiff was the only limited partner, its claims should be considered direct.  The court emphasized that fiduciary obligations are to be enforced by the corporation even if there is only one stockholder.  Id. at 28.  In addition, the court observed that "defendants' argument ignores the existence of the Partnership as an independent legal entity that retains its own rights, obligations and property, only a proportion of which, upon dissolution or by distribution, may belong to the limited partners."  Id.; accord Nomura Asset Capital, 2003 WL 138093 at *3 (action by sole limited partner against sole general partner deemed derivative).

**B.**    **The Hudson Waterfront Partnerships Are Also**
**Necessary and Indispensable Parties Because They Have**
**Separate Interests That Are Not Adequately Protected**
**by the Partners that Are Parties to the Litigation**

Even if Trump's claims were not derivative -- which they are -- the

Hudson Waterfront Partnerships still would be necessary and indispensable parties

because they are separate legal entities that have distinct interests that are insufficiently

protected by the partners.  The Hudson Waterfront Partnerships are necessary parties for

two reasons.  First, they are interested and the disposition of the action in their absence

may "as a practical matter impair or impede their ability to protect their interests."  See

Fed. R. Civ. P. 19(a)(2)(i).  As limited partnerships created under Delaware law, the

Hudson Waterfront Partnerships are "separate legal entit[ies]."  6 Del. C. § 17-201(b).

As such, they have a strong interest in "asserting and protecting [their] legal rights."

Whalen v. Carter, 954 F.2d 1087, 1097 (5th Cir. 1992).  As one district court observed:

"The parties chose to structure their business relationship by creating a separate legal

entity in the form of a limited partnership.  They cannot, at this point, proceed as if it

does not exist."  New York Life Ins. v. Ramco Holding Co., 938 F. Supp. 754, 757 (N.D.

Okla. 1996); Dunne v. Hackett & Dunne P'ship, Nos. Civ. A. 98-1963, Civ. A. 98-2365.

1999 WL 147672, at *4 (E.D. La. March 15, 1999) ("[A] partnership may be subject to

obligations, or hold certain rights, independent of the partners.").  This consideration

takes on added importance given that the partners of the Hudson Waterfront Partnerships

are in conflict, and there is therefore a real risk that the separate and distinct interests of

the Partnerships will not be adequately protected in this action.  Weber, 110 F. Supp. 2d

at 128 (LLC was necessary party because it had distinct interests that needed protection).

The Hudson Waterfront Partnerships are also necessary parties because their absence may preclude "complete relief … among those already parties." <u>See</u> Fed. R. Civ. P. 19(a)(1).  Trump seeks, <u>inter alia</u>, injunctive relief to enjoin actions by the Limited Partnerships themselves, including the imminent sale of the Hudson Waterfront Property by the Limited Partnerships.  (<u>See</u> Compl. ¶ 68 (seeking preliminary and permanent injunctive relief … including, but not limited to, enjoining improper transfers of Partnership assets . . . ").)  Obviously, the effectiveness of any such injunctive relief requires the Limited Partnerships' presence as parties.  <u>See, e.g.</u>, <u>Trademark Retail, Inc. v. Apple Glen Investors, LP,</u> 196 F.R.D. 535, 540-41 (N.D. Ind. 2000) (LLC is necessary party where plaintiff seeks injunctive relief that will affect defendants' management role as laid down in agreements between the parties).  As one court aptly declared: "[The partnership] is a separate and distinct entity from the other litigants in this case and it is unclear how this Court could bind it when it is not a party to the action."  <u>Smith v. Kessner</u>, 183 F.R.D. 373, 376 (S.D.N.Y. 1998).

The Hudson Waterfront Partnerships are not only necessary, they should also be deemed <u>indispensable</u> under Rule 19(b), meaning their joinder is fatal to Trump's invocation of subject matter jurisdiction.  Under Rule 19(b), if the Hudson Waterfront Partnerships cannot be made parties, this court must "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed . . ."  The factors to be considered in determining indispensability of a party include:

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be

> lessened or avoided; third, whether a judgment rendered in the
> person's absence will be adequate; fourth, whether the plaintiff
> will have an adequate remedy if the action is dismissed for
> nonjoinder.

Fed. R. Civ. P. 19(b).  The first factor, prejudice caused by non-joinders, turns on the

same concerns that dictate whether a party is necessary.  As shown above, the failure to

join the Hudson Waterfront Partnerships would prejudice both the defendants in this case

and the partnerships themselves.  Any such prejudice cannot be lessened or avoided by

the shaping of relief or by other measures because there are no measures to eliminate the

risk of potentially inconsistent judgments or lack of a binding order on all parties affected

hereby.  As to the third factor, as discussed above, there can be no assurance that a

judgment rendered in their absence will be adequate.

Finally, an alternative forum is available because the Hudson Waterfront

Corporation and the Limited Partnerships were incorporated under the laws of Delaware

and have their principal place of business in New York and therefore are subject to suit in

the state courts of Delaware or New York.  The Fifth Circuit has found that limited

partnerships' interests in protecting their interests are paramount and outweigh a

plaintiff's interest in being able to obtain a remedy.  Whalen, 954 F.2d at 1097 (the

interest of the partnership in asserting and protecting its legal rights compelled dismissal

even though it was unlikely that an alternative forum would be available); accord

Bankston, 27 F.3d at 168.  A fortiori, where, as here, complete relief may be obtained in

state courts, the conclusion that the Limited Partnerships are indispensable is especially

mandated.

Accordingly, applying these principles, several courts have properly found

that partnerships are indispensable parties based on an analysis under Rule 19.  See, e.g.,

Smith v. Kessner, 183 F.R.D. at 376 (partnership is indispensable party where, inter alia, the partnership and the defendants would suffer prejudice if the partnership would not be a party, and an alternative and more appropriate forum was available); see also Whalen, 954 F.2d at 1096-97 (judgment would prejudice partnership's rights and partnership could not be adequately protected by shaping relief provided); accord Bankston, 27 F.3d at 166 (partnership formed for purpose of purchasing and developing real estate was real party in interest in action stating claims for "fraud or negligent misrepresentation, breach of fiduciary duty, mismanagement and waste of partnership assets, and breach of contract" whose joinder was mandated under Rule 19).[5]

### C. Joinder of the Hudson Waterfront Associates Partnerships Destroys Diversity and This Court's Subject Matter Jurisdiction

It is apodictic that "parties may not manufacture diversity jurisdiction by failing to join a non-diverse indispensable party."  Bankston, 27 F.3d at 168. Accordingly, when making determinations concerning subject matter jurisdiction, courts must also consider the citizenship of absent indispensable parties.  Id. (citing 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3606 (2d ed. 1984)).  Therefore, the Court must consider the citizenship of the Limited Partnerships in assessing whether the requisite complete diversity exists.  In Carden, the Supreme Court specifically addressed the requirement of "complete diversity" in the

---

[5]     The fact that all partners of the Hudson Waterfront Partnerships are parties to the action does not remedy the absence of a necessary and indispensable party.  See Weber, 110 F. Supp. 2d at 128 ("the fact that all members of the [LLC] are before the Court is insufficient to assure adequate representation of the [LLC's] interests where, as here, the members are in conflict"); see also Moore, 919 F. Supp. at 1012 ("The Court is of the opinion that [the partnership] is an indispensable party regardless of the fact that all of the partners are before the Court").

context of a claim by a limited partner, and held that "diversity jurisdiction in a suit by or against the [limited partnership] depends on the citizenship of 'all the members'" -- including all of its limited partners and general partner.  494 U.S. at 195 (citations omitted).  As a result, because Trump's New York citizenship (as well as the citizenship of the General Partners, which, as above, is New York) must be attributed to the Limited Partnerships, joinder of the Limited Partnerships, whether as the named plaintiffs in a derivative action, or as indispensable parties, or both, destroys complete diversity.

Accordingly, because the Limited Partnerships are the real parties in interest and necessary and indispensable parties under Rule 19, whose joinder would destroy diversity, this action must be dismissed.  See, e.g., Weber, 110 F. Supp. 2d at 133 (dismissing action because claims are brought derivatively on behalf of LLC); Lenz, 833 F. Supp. at 381 (court lacked subject matter jurisdiction where claims were derivative in nature and required joinder of limited partnership that destroyed diversity).

## CONCLUSION

For all the foregoing reasons, the moving Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) should be granted in all respects.

Dated: August 3, 2005
      New York, New York

Respectfully Submitted,

By:
Jonathan J. Lerner (JL 7117)
Michael H. Gruenglas (MG 8705)
Maura Barry Grinalds (MB-2836)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

Attorneys for Defendants

21